UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SHARIF JONES, :
:
    Plaintiff : No. 3:CV-12-2113
:
vs. : (Judge Nealon)
:
SUPERINTENDENT FISHER, et al., :
:
    Defendants :

**MEMORANDUM**

**BACKGROUND**

Plaintiff, an inmate formerly confined in the Smithfield State Correctional Institution, ("SCI-Smithfield"), Huntingdon, Pennsylvania[1], filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, complaint). The named Defendants are Dr. Long, Dr. Dolphin, and the following SCI-Smithfield employees: Superintendent Fisher, Healthcare Administrator Dreibelbis, Food Supervisor Roher, and Lieutenant Lear. Id.

Plaintiff alleges that "during the month of the Muslim fast known as Ramadhan, Mr. Roher failed to provide fasting inmates with required amount of calories thus subjecting [Plaintiff] to inadequate diet and weight loss." Id.

He further claims that "on 7-2-11 Lt. Lear placed [him] in a camera cell where [he] could be observed by both sexes using the bathroom and washing up", which Plaintiff believes was a "tactic to deprive [him] of sleep and to punish [him]." Id.

He states that "on several occasions Quentin Dolphin failed to give [him] a blanket and

---

[1]Plaintiff is currently housed in the Fayette State Correctional Institution, La Belle, Pennsylvania.

mattress and forced [him] to sleep on a metal frame as a means of punishment and to deter [him] from seeking psychiatric help." Id.

With respect to Defendant Long, Plaintiff states that "after conducting a blood test, Ronald Long discovered that my kidneys were failing and in a state of ketosis and he failed to give me medical treatment to let me die." Id. He further claims that "Dr. Ronald Long diagnosed me with a hernia, sent me to a specialist who recommended surgery", and then "canceled my surgery because he claimed I was making his job more difficult." Id.

On October 23, 2012, Plaintiff filed the instant action in which he claims that Defendants violated his Eighth Amendment and Fourteenth Amendment rights. For relief, Plaintiff seeks compensatory and punitive damages, as well as an order requiring "defendants to perform corrective surgery on [his] hernia", an order "to remove all cameras from the cells on K-Unit", and an order to "ensure that all inmates in Psych cells receive blankets, mattresses." Id.

Presently before the Court is Defendant Long's motion to dismiss, (Doc. 15), and Defendant Dolphin's motion for summary judgment, (Doc. 22). For the reasons set forth below the Court will grant Defendants' motions.

I. **Standards of Review**

   A. **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County

of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," see FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, see Twombly, 550 U.S. at 555, and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" Iqbal, 556 U.S. at 678 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. Id. at 210-11. Second, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a ' 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon

such ground pursuant to the screening provisions of the PLRA. See id.; Dare v. U.S., 2007 WL 1811198, *4 (W.D. Pa. 2007), aff'd, 264 Fed Appx. 183 (3d Cir. 2008).

B. **Summary Judgment**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

II. **Statement of Facts**

From the pleadings, declarations, and exhibits submitted therewith, the following pertinent facts can be ascertained as undisputed.

From Plaintiff's first arrival at SCI-Smithfield on February 3, 2011, through his transfer to SCI-Rockview on June 26, 2011, Plaintiff was seen and evaluated on over seventeen (17) different occasions by five (5) different psychiatrists. See (Doc. 26, Ex. A, pp. 1-79). During that period, Plaintiff was placed in a psychiatric observation cells ("POC") at least eighteen (18) times because he either attempted suicide, threatened to attempt suicide, or made a suicidal gesture like tying a noose from a bedsheet. Id. On sixteen (16) of these admissions, Dr. Dolphin's orders permitted

Plaintiff to possess the "basic four" while in the POC – an "anti-suicide" smock and blanket which are tear-resistant, a mattress, and "slides" – basic, laceless shoes. Id.

On only two occasions was Plaintiff allowed less than these basic four items, when he was ordered only a smock.

First, on December 4, 2011, Dr. Dolphin ordered Plaintiff admitted to a 23-hour observation cell with only a smock after he put a sheet around his neck while still in a POC cell, when he had been about to be moved. (Doc. 26, Ex. A at 54, Psychiatric Review Team/Special Needs Unit Support Team Meeting Summary Form). He was readmitted to the POC without ever leaving it. Id. He was given a Styrofoam food tray with finger foods, and it was ordered that checks occur every 15 minutes. Id. The following day, observation was discontinued and Plaintiff was permitted to return to his cell without sheets or a jumpsuit. Id.

Second, Plaintiff was admitted into the POC with only a paper smock and food tray, on April 22, 2012. (Doc. 26, Ex. A at 69, Psychiatric Review Team/Special Needs Unit Support Team Meeting Summary Form). Upon Plaintiff reporting thought of self-harm, Dr. Dolphin ordered his placement in the POC for 23-hour observation with 15-minute checks, a Styrofoam food tray, and paper smock. Id. The following day, he was discharged from 23-hour observation. Id. On April 23, 2012, Plaintiff saw Dr. Dolphin and reported that he was upset and depressed about bad news he had received about his sister. (Doc. 26, Ex. A at 70, Psychiatry Progress Notes). Plaintiff requested medication for his mood and Dr. Dolphin prescribed him Risperdal. Id.

On June 30, 2011, Plaintiff was seen in the RHU by Dr. Dolphin. (Doc. 26, Ex. A at 32, Progress Notes). Plaintiff wanted a recommendation to be released to general population and removal of the Z-Code issued by the Program Review Committee (PRC). Id. Dr. Dolphin's

examination was grossly normal. Id. He reordered Plaintiff's current medication and said he would speak with the PRC about the issues Plaintiff raised. Id.

On July 28, 2011, Plaintiff told a psychologist that he believed he had a hernia and wanted something done about it. (Doc. 26, Ex. A at 33, Progress Notes). He threatened to perform surgery on himself if something wasn't done. Id. Psychologist Thompson contacted nursing and found out that Plaintiff was scheduled for a consult the following week. Id.

In August 2011, Plaintiff was diagnosed with a hernia by Dr. Long and sent to Altoona Hospital to see a specialist, Dr. McGee, who recommended surgery. (Doc. 20, Brief in Opposition at 3).

From August 26, 2011 through September 6, 2011, Plaintiff refused to eat meals.[2] (Doc. 26, Ex. A at 40-43, progress notes). As of September 2, 2011, he had missed 27 meals. Id. Plaintiff alleges that "Defendant Ronald Long told Plaintiff unless he eats, the Plaintiff's surgery for his hernia would be canceled." (Doc. 20, Brief in Opposition at 2).

On September 2, 2011, Medical Director Long, submitted a signed statement to the Court of Common Pleas of Huntingdon County, in support of a petition for permission to provide Plaintiff with involuntary nutrition. (Doc. 26, Ex. A, at 40-41, Affidavit of Ronald A. Long, M.D.). Dr. Long noted that Plaintiff stated that he believed a judge was trying to kill him and that his food was poisoned. Id.

---

[2] Plaintiff has a history of hunger strikes. (Doc. 26, Ex. A at 40, Affidavit of Ronald A. Long, M.D., SCI-Smithfield Medical Director). This is approximately his fifth hunger strike. Id. In September 2009, Plaintiff missed 20 meals; in August 2000, Plaintiff missed 22 meals; in December 2010, Plaintiff missed 26 meals; and in July 2011, Plaintiff missed 15 meals. Id.

On September 7, 2011, Plaintiff was seen by Dr. Dolphin, who wrote a lengthy note in Plaintiff's medical record. (Doc. 26, Ex. A at 42, Progress Notes). Entitling his note "Starvation", Dr. Dolphin, who notes that Plaintiff is "well-known" to him, stated the following:

> After reviewing this patient's psychiatric history through the many years Jones was incarcerated, and with my many recent encounters with Mr. Jones, it is clear to me that this period of starvation has nothing to do with mental illness. Mr. Jones is currently claiming that he won't eat because his food is being poisoned. When others claim they will eat the tray, Mr. Jones responds by saying that the poison is only activated by his particular DNA. On the surface it would appear that Mr. Jones may well be psychotic but this would be misleading. Mr. Jones has a lengthy history of elaborate delusions which have been deemed by numerous clinicians as an act and not true psychotic delusions. Mr. Jones is taking psychiatric medication more at his request than by psychiatric necessity. He claims to have less "mood feelings" on the medication but I don't see any objective difference in Jones on or off medication. Assessment/Plan: Mr. Jones is not psychotic and simply chooses not to eat to gain attention and be disruptive to the Institution.

Id.

On September 9, 2011, a Court Order was obtained to permit tube feedings to Plaintiff since he refused to take food or fluids. (Doc. 26, Ex. A at 44, Order).

### III.  DISCUSSION

#### A.  Eighth Amendment Claim - Conditions of Confinement

"When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, a court must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994)." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is also clear that: "The Eighth Amendment prohibits punishments inconsistent with 'evolving standards of decency that mark the progress of a maturing society.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Trop v. Dulles, 356 U.S. 86 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive

inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

After reviewing previous court decisions that considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that many of the complaints advanced by Plaintiff have been found not to "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). For example, "[p]ursuant to the case law related to the denial of bedding, the denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." Milhouse v. Gee, 2011 WL 3627414, *13 (M.D. Pa. 2011) (holding two-week denial of mattress was not sufficiently serious to rise to the level of an Eighth Amendment violation); Schaeffer v. Schamp, 2008 WL 2553474, *6 (W.D. Pa. 2008) (finding that confinement in hard cell for ten days without a mattress does not constitute cruel and unusual punishment); Castro v. Chesney, 1998 WL 767467 (E.D. Pa. 1998) ("Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation."); Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. 2005) (holding that no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor).

Thus, to the extent that Plaintiff lodges specific condition of confinement claims against Defendant Dolphin, those claims all relate to matters which do not rise to the level of a deprivation of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Furthermore, Plaintiff has failed to show any deliberate indifference on the part of Defendant Dolphin. Plaintiff was placed in the POC as a result of his own actions, which included

threatening to hurt himself and putting a sheet around his neck, actions he does not deny. For these reasons, Defendant Dolphin is to be granted summary judgment as a matter of law.

### B. The Eighth Amendment Standard - Deliberate Indifference

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional

judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Also, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id. at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977). Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer, 685 F. Supp. at 1339.

The extensive documentation of record indicates that Plaintiff has been repeatedly evaluated by multiple mental health personnel who have reached differing conclusions about his condition and diagnosis. See (Doc. 26, Ex. A, pp. 1-79). He has been consistently evaluated and reevaluated and his mental health needs have been given considerable attention. Id. Plaintiff's medical record demonstrates that he has a propensity to act out and to exhibit hanging and other suicidal gestures, some more apparently serious than others, but each episode was treated as if it was a bona fide suicide attempt. Id. Some of his attempts have had lethal potential and Dr. Dolphin has documented his concern that Plaintiff will miscalculate and accidentally succeed. Id. Accordingly, every gesture and threat has been taken seriously. As a result, Plaintiff spent considerable time in and out of psychiatric observation cells (POCs), which entailed depriving him of any instrument he might use to cause harm to himself. These were decisions made in the exercise of Dr. Dolphin's best medical judgment on what was necessary to keep Plaintiff from attempting suicide.

To the extent that Plaintiff's disagrees with medical personnel concerning what treatment he should have received, such disagreement does not serve as a predicate to liability under § 1983. See White, 897 F.2d at 108-110 (No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (concluding that a claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there is no evidence of record that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff.

While Plaintiff is not in agreement with the medical decisions made, he was accorded continual medical care. Therefore, Plaintiff has failed to present evidence from which a reasonable jury could conclude that the Defendant Dolphin possessed the culpable mental state necessary for Eighth Amendment liability to attach. See Estelle, 429 U.S. at 106; Lanzaro, 834 F.2d at 346; West, 571 F.2d at 161. Indeed, the extent and quality of medical attention that Defendant Dolphin provided Plaintiff precludes a finding of deliberate indifference.

Similarly, Defendant Long's medical decision about the suitability of Plaintiff as a candidate for hernia surgery due to the Plaintiff's self-inflicted weakened state, does not support a finding that Dr. Long was "deliberately indifferent" to Plaintiff's medical needs. Rather, the record, presented by Plaintiff, clearly shows that Dr. Long was actively attempting to preserve Plaintiff's health despite Plaintiff's efforts to destroy his health through his hunger strikes. As such, this Court will not second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). Once again, Plaintiff's allegations, at best, amount to a subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. As such, Plaintiff's civil rights complaint fails to articulate an arguable claim under § 1983. See White, 897 F.2d at 108-10 (No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness.").

A separate Order will be issued.

Dated: September 20, 2013

United States District Judge